UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------X

Ryanne Nicole Taylor,

              Plaintiff,            **MEMORANDUM & ORDER**

   - against -               No. 21-cv-182 (KAM)

Commissioner of Social Security,

              Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Ryanne Nicole Taylor appeals the final decision of Defendant Commissioner of Social Security denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. §§ 301-1397mm.  (ECF No. 1, Compl.)  The parties have cross-moved for judgment on the pleadings.[1]  (ECF No. 19, Pl.'s Notice of Mot. & Mot. J. Pleadings; ECF No. 17, Notice of Cross-Mot.)  For the reasons below, the Court denies Taylor's motion and grants the Commissioner's motion.

---

[1] Social security appeals are generally resolved on motions for judgment on the pleadings.  This is because judicial review of social security decisions is limited to "the pleadings and transcript of the record," *see* 42 U.S.C. § 405(g); *Kercado ex rel. J.T. v. Astrue*, No. 08-cv-478 (GWG), 2008 WL 5093381, at *2 (S.D.N.Y. Dec. 3, 2008), and the Commissioner's "answer may be limited to a certified copy of the administrative record," *see* Fed. R. Civ. P. Suppl. Soc. Sec. R. 4(b), as it was here, (*see* ECF Nos. 10-11, Admin. Tr.).

<u>**BACKGROUND**</u>

The parties have filed a joint statement of relevant facts, which the Court has reviewed and incorporates by reference. (*See* ECF No. 20, Joint Statement of Facts.)

Taylor applied for DIB and SSI on October 24, 2018, alleging disability since March 24, 2018, due to borderline personality disorder, insomnia, and anxiety.  (R.10; 67-68.)[2] The Commissioner denied her claim on April 3, 2019, and again after reconsideration on August 14, 2019, concluding she was ineligible for benefits because she was not disabled.  (R.127, 143.)  Taylor then requested a hearing before an Administrative Law Judge ("ALJ"),[3] which occurred on January 3, 2020.  (R.29-64.)

## I.   The Record

Taylor submitted medical records that the ALJ received into evidence at the hearing.  (R.32; *see* R.20-24.)  The ALJ also considered a medical opinion from Taylor's psychotherapist, Shani Zylberman, LCSW-R, a medical opinion from agency consultative examiner John Nikkah, Ph.D., and medical record

---

[2] The Court cite to the Bates-stamped Administrative Transcript, (ECF No. 10), as (R.__.).
[3] The Social Security Act directs the Commissioner to make findings of fact and determine the rights of anyone who submits a claim for DIB or SSI. 42 U.S.C. §§ 405(b)(1), 1383(c)(1)(A).  The Commissioner has delegated that responsibility to ALJs.  *See* 20 C.F.R. §§ 404.944-404.961, 416.1444-416.1461. If an ALJ issues an adverse decision, the claimant may appeal it to the Social Security Appeals Council.  20 C.F.R. §§ 404.967-404.982, 416.1467-416.1482.

reviews from two state agency consultants.[4]  (R.17.)

Taylor's medical records showed that she was hospitalized for suicidal ideation on December 23, 2015, and diagnosed with major depressive disorder.  (R.428, 433.)  She was hospitalized for suicidal ideation again on March 22, 2018, after she had travelled to help her mother after a surgery and become overwhelmed from falling behind in her college coursework. (R.477.)  Over the next year, Taylor completed a partial hospital stay program and received outpatient treatment for symptoms related to depression, anxiety, insomnia, risk-taking behavior, self-harm, and suicidal ideation.  (R.494, 556–59, 571–98, 606–30, 701–731.)  The reported severity of Taylor's symptoms fluctuated over time.  (*See id.*)  Notably, Taylor reported working as a full-time nanny for three children through January 2020, as reflected in the most recent treatment records. (*See* R.571, 576, 582, 584, 589, 592, 701.)

Zylberman, Taylor's psychotherapist who had treated her since January 2016, opined in a January 20, 2019, letter that Taylor had "limited ability to do normal [work-related] activities due to her debilitating depressive episodes." (R.519.)  Specifically, Zylberman cited Taylor's struggles with

---

[4] The Social Security Administration works with state governments to maintain disability claims processing systems.  20 C.F.R. §§ 404.1603, 416.1003. State agencies generally make the initial "determinations of disability with respect to all persons in the State."  20 C.F.R. §§ 404.1613, 416.1013.

maintaining a schedule, punctuality, interacting with
supervisors, and changes in expectations during her depressed
states.  (*Id.*)  Zylberman explained that Taylor suffered from
"severe depressive episodes that may come out of nowhere" and
that the episodes rendered Taylor "unable to go to work, do her
schoolwork, and often get out of bed."  (R.518.)  Zylberman
further wrote that Taylor struggled with maintaining
concentration at work and in school.  (*Id.*)  When Taylor
simultaneously worked and attended school, Zylberman noted,
Taylor "decompensated and had to drop all her classes."  (*Id.*)
Zylberman's "prognosis [was] that [Taylor would] need ongoing
therapy [at least] two times a week."  (*Id.*)

Dr. Nikkah, an agency examining consultant, conducted a
psychiatric evaluation of Taylor on March 7, 2019, and opined
that Taylor's symptoms did "not appear to be significant enough
to interfere with [her] ability to function on a daily basis."
(R.520–24.)  Dr. Nikkah noted that Taylor was able to complete
daily tasks without assistance, including grooming, cooking,
shopping, and taking public transportation.  (R.523.)  A mental
status examination revealed that Taylor was cooperative and able
to relate to Dr. Nikkah.  (R.522.)  Dr. Nikkah found "no
evidence" that Taylor was limited in her ability to understand,
remember, and apply simple directions and instructions; sustain
an ordinary routine and regular attendance at work; maintain

4

personal hygiene and appropriate attire; or be aware of normal hazards and take appropriate precautions.  (R.523.)  He found Taylor "mildly limited" in her ability to understand, remember, and apply complex directions and instructions; use reason and judgment to make work-related decisions; interact adequately with her supervisors, coworkers, and the public; and sustain concentration and perform a task at a consistent pace.  (*Id.*)  Finally, he found Taylor "moderately limited" in her ability to regulate emotions, control behavior, and maintain wellbeing.  (*Id.*)

A state agency non-examining consultant reviewed Taylor's medical records and opined on April 3, 2019, that Taylor could "carry out and remember simple instructions, make simple [work-related] decisions, and adapt to routine changes in a low stress work environment."  (R.86.)  The consultant further opined that Taylor's "medically determinable impairments could have reasonably been expected to produce the alleged symptoms" but that Taylor's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] generally not consistent with the evidence of record."  (R.87)  On reconsideration, the state agency consultant reached substantially similar conclusions.  (R.103, 106.)

Taylor appeared at the January 3, 2020, hearing before the ALJ represented by counsel.  (R.31.)  Taylor testified that that

"depression, anxiety, and . . . borderline personality disorder"
prevented her from working and explained that she would "get
stressed very easily" and "shut down," making it "hard to
concentrate, focus, [or] complete any tasks."  (R.44.)  The ALJ
elicited testimony from Taylor that she graduated from college
in May 2019 with accommodations.  (R.41–43, 49–50.)  Taylor
testified that her college permitted her to miss "[p]robably all
but maybe one or two" classes per week.  (R.50.)  She further
testified that her depressive symptoms caused her "a lot of
difficulty getting out of bed" and that leading up to her
hospitalization, it became "harder and harder to attend" her
prior job in retail "and get there on time."  (R.51, 54.)

　　The ALJ next heard from a vocational expert, Linda Vause,
and asked her to assume a hypothetical person with Taylor's age
and education and the ability to (1) "perform medium work that
requires only the ability to understand, remember[,] and carry
out short and simple instructions in a non-production pace
setting," (2) perform "work that requires only the ability to
occasionally make work-related decisions," and (3) "tolerate
occasional interaction with supervisors, coworkers, and the
general public."  (R.56.)  Vause testified that this person
could not perform Taylor's previous retail work but could
perform other jobs in the national economy, including that of a
sweeper-cleaner, window cleaner, or automobile detailer.

6

(R.57.)  Vause further testified that the hypothetical person
could not perform any full-time unskilled jobs if required to
miss two days of work per month or be off task for ninety
minutes per day in addition to standard breaks.  (R.57-58.)

## II.  The ALJ's Decision

The ALJ issued a written decision on April 1, 2020, finding
Taylor not disabled and thus not entitled to DIB or SSI.
(R.19.)  The ALJ found that Taylor had not engaged in
substantial gainful activity since she applied for DIB and SSI
and that she had several medically determinable impairments that
significantly limited her ability to perform basic work
activities, including borderline personality disorder, major
depressive disorder, bipolar disorder, and obesity.  (R.12-13.)
The ALJ also found that Taylor did not have an impairment or
combination of impairments that would automatically qualify her
as disabled under the applicable regulations.  (R.13-15); *see*
20 C.F.R. §§ 404.1525, 416.925; 20 C.F.R. Part 404, Subpart P,
App'x 1, Listings 12.04, 12.06, 12.08.  The ALJ found "mild"
limitations in Taylor's ability to understand, remember, or
apply information; interact with others; and concentrate,
persist, or maintain pace.  (R.13-14); *see* 20 C.F.R.
§ 404.1520a(c)(3), 416.920a(c)(3).  The ALJ found "moderate"
limitations in Taylor's ability to adapt or manage herself.
(R.14.)  The ALJ also found insufficient evidence of "marginal

adjustment."   (R.14–15.)

     Next, the ALJ concluded that Taylor had the residual
functional capacity ("RFC") to do low-stress "medium work" that
"requires only the ability to understand, remember, and carry
out short and simple instructions in a non-production paced
setting" and "occasionally make work-related decisions" and that
"involves only occasional changes in the work setting."   (R.15.)
The ALJ further concluded that Taylor could "tolerate occasional
interaction with supervisors, coworkers, and the general
public."   (*Id.*)   The ALJ found that although Taylor's
impairments could reasonably be expected to cause her alleged
symptoms, Taylor's testimony concerning the intensity,
persistence, and limiting effects of her symptoms were "not
entirely consistent with the medical evidence and other evidence
in the record."   (R.16.)

     In formulating Taylor's RFC, the ALJ relied on Taylor's own
testimony and the medical opinions of Zylberman, Dr. Nikkah, the
state agency medical record reviews, and a third-party
functional assessment by Taylor's friend and roommate.   (R.15–
17.)   The ALJ found Zylberman's opinion "somewhat persuasive"
because it was from a long-time treating source and highly
detailed; however, the ALJ also found it "inconsistent with
evidence in the case record," including evidence of Taylor's
full-time post-onset work activity and ability to graduate from

8

college.  (R.17.)  The ALJ found Dr. Nikkah's opinion "generally persuasive" because it was "based on a detailed examination" and "generally consistent" with the other medical evidence.  (*Id.*) The ALJ specifically noted that per Dr. Nikkah's report, "[t]here was no evidence of limitation in [Taylor's] ability to sustain an ordinary routine and regular attendance at work." (*Id.*)  The ALJ found the state agency medical record reviews only "somewhat persuasive" because they were "based on reviews of an incomplete case record."  (*Id.*)  Finally, the ALJ found that the third-party functional assessment, a non-medical opinion, could not "outweigh the overall record of objective medical evidence and medical source statements."  (*Id.*)

Based on Taylor's age (twenty-four years at the time of her application), education, work experience, and RFC, the ALJ concluded Taylor was unable to perform her past relevant work in retail but that she was able to perform other jobs that existed in significant numbers in the national economy.  (R.18.) Specifically, the ALJ concluded Taylor could work as a sweeper-cleaner, window cleaner, or automobile detailer, the three jobs Vause cited at the hearing.  (R.19.)  Because Taylor was capable of performing such work, the ALJ determined her not disabled and thus not entitled to DIB or SSI.  (*Id.*)

On November 10, 2020, the Appeals Council found no basis to change the ALJ's ruling, thus rendering the ALJ's ruling the

Commissioner's final decision.  (R.1); *see* 20 C.F.R. §§ 404.981, 416.1481.  On January 13, 2021, Taylor timely brought this action against the Commissioner for judicial review of the Commissioner's decision.  (*See* Compl.)

## LEGAL STANDARD

To receive DIB or SSI, a claimant must be "disabled" under the Social Security Act.  42 U.S.C. §§ 423(a), 1382(a).  The claimant is "disabled" when he or she is unable to "engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that could be expected to result in death or has lasted for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[5]  The impairment must be of "such severity" that the claimant cannot do his or her previous work or any other substantial gainful work that "exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  In determining whether the claimant is disabled, the Commissioner must consider (1) the objective medical facts in the record; (2) diagnoses or medical opinions based on those facts; (3) subjective evidence of pain or disability; and (4) the claimant's education, age, and work experience.  *Duran v. Comm'r of Soc. Sec.*,

---

[5] The provisions of the Social Security Act governing DIB and SSI use the same standards to determine disability. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).  Thus, cases addressing disability as to one form of benefits are equally instructive as to the other.  *Santoro v. Comm'r of Soc. Sec.*, No. 21-cv-2044 (KAM), 2023 WL 8177365, at *4 n.5 (E.D.N.Y. Nov. 27, 2023).

618 F. Supp. 3d 94, 97 (E.D.N.Y. 2022).

The Commissioner's regulations prescribe a five-step process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The Commissioner determines whether (1) the claimant is working, (2) the claimant has a "severe impairment," (3) the impairment is one that requires a determination of disability under the applicable regulations, (4) the claimant can continue his or her prior work, and (5) other work exists in the national economy that the claimant can perform. *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008). To determine whether the claimant can do prior work or other work at the fourth or fifth steps, the Commissioner compares such work against the claimant's RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv)–(v), 416.920(a)(4)(iv)–(v). RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant has the burden of proof at the first four steps, and the Commissioner has the burden of proof at the fifth. *Colgan v. Kijakazi*, 22 F.4th 353, 358 (2d Cir. 2022). Because a hearing on disability benefits is an inquisitorial rather than adversarial proceeding, however, the ALJ has an affirmative obligation to develop the administrative record. *Hernandez v. Comm'r of Soc. Sec.*, No. 21-cv-5405 (WFK), 2023 WL 4209622, at *3 (E.D.N.Y. June 27, 2023).

If the Commissioner denies benefits, the claimant may seek judicial review of that decision by commencing a civil action in a federal district court.  42 U.S.C. §§ 405(g) (governing judicial review of DIB decisions), 1383(c)(3) (incorporating Section 405(g) as to SSI).  The court may set aside the Commissioner's decision only if the Commissioner's factual findings are not supported by substantial evidence or the Commissioner's decision was based on a legal error.  *Duran*, 618 F. Supp. 3d at 98.  "Substantial" evidence means enough to reasonably support the Commissioner's decision.  *Id.*  Inquiry into "legal error" involves considering whether the claimant had a "full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act."  *Id.* (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).

After reviewing the Commissioner's decision, the court may remand the case to the Commissioner for further proceedings. 42 U.S.C. § 405(g).  Remand is appropriate where there are gaps in the administrative record or where the ALJ applied the wrong legal standard.  *Oteze Fowlkes v. Adamec*, 432 F.3d 90, 98 (2d Cir. 2005).  Remand is especially appropriate if more findings would clarify the rationale for the ALJ's decision. *Duran*, 618 F. Supp. 3d at 99.  If the record shows persuasive proof of disability, however, the court may simply reverse the

12

ALJ's decision and remand the case with an instruction to
calculate and pay benefits.  *Id.*

## DISCUSSION

Taylor argues that the ALJ's decision must be set aside
because the ALJ (1) legally erred by improperly evaluating
Zylberman's medical opinion and (2) failed to support his RFC
finding with substantial evidence.  (ECF No. 19-1, Pl.'s Mem. of
Law ("Pl.'s Mem.") 2.)  The Court disagrees and concludes that
the ALJ properly evaluated Zylberman's opinion and supported his
RFC finding with substantial evidence.

## I.   Evaluation of Zylberman's Opinion

Taylor first contends that the ALJ failed to comply with
the current regulations for evaluating medical opinions,
specifically that the ALJ failed to explicitly address the
"supportability" and "consistency" of Zylberman's opinion.  (*Id.*
4, 6.)  In 2017, new regulations were issued that changed the
standard for evaluating medical opinion evidence regarding
claims filed on or after March 27, 2017.  *See* 20 C.F.R.
§§ 404.1520c, 416.920c.  Because Taylor filed her claim on
October 24, 2018, the new regulations apply here.

Under the new regulations, the Commissioner no longer
"defer[s]" or gives "controlling weight" to a claimant's
treating medical sources.  20 C.F.R. §§ 404.1520c(a),
416.920c(a).  Instead, when evaluating the persuasiveness of

13

medical opinions, the Commissioner considers the following five factors:  (1) supportability, (2) consistency, (3) the relationship between the source and claimant, (4) the source's specialization, and (5) other relevant factors.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  In each case, the ALJ must explain how he or she considered the first two factors, which are the most important ones.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

As a threshold matter, Zylberman's opinion as a licensed clinical social worker is entitled to the same consideration by the Commissioner that the medical doctors' opinions are.  Though licensed clinical social workers are excluded from the definition of "acceptable medical source," *see* 20 C.F.R. §§ 404.1502(a), 416.902(a), Zylberman remains a "medical source" because she was licensed and working within the scope of her practice permitted under New York law, *see* 20 C.F.R. §§ 404.1502(d), 416.902(i).  The current regulations require ALJs to articulate how they consider medical opinions from *all* "medical sources" regardless of whether a given source is "acceptable."  *See* Revisions to Rules, 82 Fed. Reg. 5884-01, 2017 WL 168819, at *5844 (Jan. 18, 2017).  Thus, the Court evaluates the ALJ's application of the five enumerated factors to Zylberman's opinion in the same manner as the Court would evaluate the application of those factors to a medical doctor's

14

opinion. *See Sonia N.B.A. v. Kijakazi*, No. 21-cv-709 (TOF),
2022 WL 2827640, at *7 n.4 (D. Conn. July 20, 2022); *John W. v.
Kijakazi*, No. 20-cv-1180 (BKS), 2022 WL 768672, at *15 n.12
(N.D.N.Y. Mar. 14, 2022); *Kimberly W. v. Kijakazi*, No. 20-cv-925
(DJS), 2022 WL 561665, at *3 (N.D.N.Y. Feb. 24, 2022).

The Court disagrees with Taylor that the ALJ "engaged in no
discussion regarding the supportability factor" as to
Zylberman's opinion, (*see* Pl.'s Mem. 4), and finds that the ALJ
adequately addressed that factor.  Supportability concerns
whether the medical source relied on relevant medical evidence
to explain his or her opinion.  20 C.F.R. §§ 404.1520c(c)(1),
416.920c(c)(1).  The persuasiveness of a medical opinion
increases with the relevance of the evidence and supporting
explanations offered.  *Id.*  Here, though the ALJ did not use the
word "supportability" in addressing Zylberman's opinion, the ALJ
in finding the opinion "somewhat persuasive" explained that it
was "from a long time treating source and . . . highly
detailed."  (R.17.)  The ALJ noted Zylberman's statements that
Taylor got overwhelmed by work stress, had difficulty agreeing
with supervisors, suffered from suicidal ideation, and had
limited ability to do normal work-related activities and sustain
concentration due to her depressive episodes.  (R.17.)

The ALJ could have indicated more clearly that he addressed
the supportability of Zylberman's opinion if he had used the

15

word "supportability" (or some variant of that word), but he did address it.  *See Carter v. Comm'r of Soc. Sec.*, No. 21-cv-7038 (SJB), 2023 WL 3997262, at *2 (E.D.N.Y. June 14, 2023) (finding ALJ addressed supportability and consistency despite "failure to use those words or cite the relevant regulations").  The case Taylor relies on, (*see* Pl.'s Mem. 4-5), is unavailing because the ALJ in that case offered *no* explanation as to what the consulting examiners "used to support their opinions and reach their ultimate conclusions," *see Cuevas v. Comm'r of Soc. Sec.*, No. 20-cv-502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *R&R adopted by* 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).  Here, by contrast, the ALJ stated that Zylberman's opinion was "highly detailed" after he described specific medically relevant observations Zylberman made, and Zylberman's "highly detailed" explanation influenced him to deem the opinion at least "somewhat persuasive."  (R.17.)  It is clear from this context that he assessed the extent to which Zylberman's opinions were supported by relevant medical evidence.

The Court also finds that the ALJ adequately discussed the consistency of Zylberman's opinion.  The consistency factor, unlike the supportability factor, requires the ALJ to consider how the medical source's reasoning compares to other evidence in the record, including evidence the source did not discuss.  *See* 20 C.F.R. 404.1520c(c)(2), 416920c(c)(2).  Here, the ALJ

16

explicitly found Zylberman's opinion "inconsistent" with other evidence in the record, including Taylor's treatment notes reflecting that she held a full-time job and finished college during the relevant period.  (R.17); *see Carter*, 2023 WL 3997262, at *2 (ALJ sufficiently addressed consistency by explaining how medical source's opinions "were in tension with the findings of the other evidence").  Taylor suggests the ALJ's consistency finding was wrong, arguing that Taylor's work was part-time and that her college granted her accommodations.  (Pl.'s Mem. 6–7.)  The treatment notes, however, state that Taylor was working full-time.  (*See* R.571, 576, 582, 584, 589, 592.)  As to Taylor's accommodations in college, Taylor cited only her own testimony, (*see* R.49–50), and regardless, the ALJ's consistency finding did not have to "reconcile explicitly every conflicting shred of medical testimony," *see DeRise v. Comm'r of Soc. Sec.*, No. 21-cv-565 (KAM), 2023 WL 7166724, at *7 (E.D.N.Y. Oct. 31, 2023) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).  Thus, the ALJ committed no error in his evaluation of the consistency factor.

Finally, the Court rejects Taylor's argument that the ALJ erred by "fail[ing] to discuss which portions of LCSW Zylberman's opinion he found persuasive and which portions he did not."  (*See* Pl.'s Mem. 7.)  Current regulations "do not require the ALJ to articulate an explanation for how persuasive

[he or] she finds every individual opinion of a medical source."
*Tammi F. v. Saul*, No. 20-cv-1079 (JWL), 2020 WL 7122426, at *6
(D. Kan. Dec. 4, 2020); *accord Giering v. Comm'r of Soc. Sec.*,
No. 20-cv-12353 (GCS), 2022 WL 2713547, at *2 (E.D. Mich.
July 13, 2022); *Todd A. v. Kijakazi*, No. 20-cv-594 (DJN),
2021 WL 5348668, at *8 (E.D. Va. Nov. 16, 2021).  Moreover, as
the Commissioner points out, (*see* ECF No. 17-1, Mem. of Law
Supp. Def.'s Cross-Mot. J. Pleadings ("Comm'r's Mem.") 12), the
phrasing the ALJ used to qualify his RFC finding provides
insight into which of Zylberman's opinions he found persuasive,
(*Compare* R.15 *with* R.519); *see Todd A.*, 2021 WL 5348668, at *8
(finding ALJ's decision, "when read in its entirety," adequately
accounted for treating source's more specific opinions).

In sum, the Court concludes that the ALJ committed no
procedural errors in how he applied the current regulations to
Zylberman's medical opinion.

## II.  **Substantial Evidence**

Taylor next contends that the ALJ failed to support his RFC
finding with substantial evidence.  The Court disagrees.  The
substantial evidence standard is "not high."  *Rucker v.
Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022) (quoting *Colgan*,
22 F.4th at 359).  "Substantial" evidence means only "more than
a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157
(2d Cir. 2020) (quoting *Moran*, 569 F.3d at 112).  An ALJ's

finding is considered supported by substantial evidence if any reasonable factfinder could have made the same finding, even if substantial evidence also supports the claimant's position. *Powell v. Saul*, No. 19-cv-2983 (KAM), 2021 WL 878771, at *4–5 (E.D.N.Y. Mar. 9, 2021).

A reasonable factfinder could have arrived at the same RFC that the ALJ did here.  First, the ALJ properly relied on the "generally persuasive" medical opinion of Dr. Nikkah, who personally examined Taylor and found no more than a moderate limitation in any of the four relevant functional areas.  (*See* R.17); 20 C.F.R. §§ 404.1520a(c)(3) (listing the areas as to DIB), 416.920a(c)(3) (same as to SSI).  The ALJ also considered the state agency record reviews, which reached conclusions similar to Dr. Nikkah's, and he discounted their persuasive value appropriately.  (*See* R.17.)  Though the record also contained Zylberman's opinion, which opined to the contrary that Taylor had a "limited ability to do normal work related activities," (R.519), the ALJ was "free to . . . choose between properly submitted medical opinions," *see Frias v. Comm'r of Soc. Sec.*, 225 F. Supp. 3d 125, 135 (E.D.N.Y. 2016) (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)).  As explained above, the ALJ followed proper procedures in how he evaluated Zylberman's opinion.  He committed no error in finding Dr. Nikkah's opinion more persuasive.

Additionally, it appears that the ALJ *did* incorporate some of Zylberman's findings into Taylor's RFC, even if he did not adopt her ultimate conclusion.  (*See* Comm'r's Mem. 12.)  For example, Zylberman opined that Taylor had "difficulty" with "supervisory figures," struggled with "change in a workplace," and got "very overwhelmed by work stress."  (R.519.) Accordingly, the ALJ limited Taylor's RFC to "occasional interaction with supervisors," "occasional changes in the work setting," and "low-stress work."  (R.15.)  This amounted to an acceptable synthesis of the available medical opinions.  Even if Taylor can point to substantial evidence that may have supported more restrictions, (*see* Pl.'s Mem. 2–11), the "relevant question" is whether "substantial evidence supports *the ALJ's decision*," *see Wider v. Colvin*, 245 F. Supp. 3d 381, 386 (E.D.N.Y. 2017) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)).  Given the record before the ALJ, including treatment notes and medical opinions, and the restrictions the ALJ added to Taylor's RFC, substantial evidence supported the ALJ's finding.

Moreover, the ALJ properly considered information in Taylor's medical records in assessing Taylor's subjective testimony "concerning the intensity, persistence[,] and limiting effects of [her] symptoms."  (*See* R.16.)  An ALJ is "free to resolve issues of credibility as to lay testimony."  *Frias*,

20

225 F. Supp. 3d at 135 (quoting *Balsamo*, 142 F.3d at 81).  Here, as the ALJ observed, Taylor's treatment notes reflected that she worked full-time caring for three children after the alleged onset date of her symptoms.  (R.16; *see* R.571, 576, 582, 584, 589, 592.)  The ALJ's consideration of Taylor's "post-onset work activity" was not an error but rather fulfilled his duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  *See Ramos v. Astrue*, No. 09-cv-3030 (RJD), 2010 WL 3325205, at *8 (E.D.N.Y. Aug. 19, 2010) (quoting *Stanton v. Astrue*, 370 F. App'x 231, 235 (2d Cir. 2010)).  It was also proper for the ALJ to consider medical notes indicating that Taylor's symptoms improved with treatment.  (*See* R.16); *Ceaser v. Comm'r of Soc. Sec.*, No. 21-cv-3115 (JMA), 2023 WL 6541886, at *6 (E.D.N.Y. Oct. 6, 2023).

Finally, a reasonable factfinder could have omitted an absence or time-off-task restriction from Taylor's RFC.  Taylor correctly points out that Vause, the vocational expert, testified that a hypothetical person with an RFC comparable to Taylor's would not be able to perform any full-time unskilled job if required to miss at least two days of work per month or be off task for at least ninety minutes per day in addition to standard breaks.  (Pl.'s Mem. 11; *see* R.57-58.)  On the other hand, "[t]he law does not require" the ALJ to "expressly analyze this issue whenever a [vocational expert] testifies to a maximum

21

tolerable absentee rate or off-task allowance." *See Reece v. Kijakazi*, No. 22-cv-674 (BCM), 2023 WL 6211788, at *16 (S.D.N.Y. Sept. 25, 2023).  An ALJ need not "address a vocational expert's testimony as to a particular hypothetical when the ALJ determines that the hypothetical does not accurately reflect the claimant's limitations." *Terry E. v. Kijakazi*, No. 19-cv-5722 (ARW) 2021 WL 6125844, at *6 (N.D. Ill. Dec. 28, 2021).  The ALJ is free to pose a hypothetical question to a vocational expert regarding a limitation and later "implicitly reject[] the basis for the hypothetical" by omitting the limitation from the claimant's RFC "so long as [the ALJ's] assessment [is] sound in that regard." *Id.*

The ALJ's assessment was sound here.  The ALJ credited as "generally persuasive" Dr. Nikkah's medical opinion, explicitly citing Dr. Nikkah's finding based on a personal examination of Taylor that "[t]here was no evidence of limitation in [Taylor's] ability to sustain an ordinary routine and regular attendance at work." (R.17.)  The ALJ was entitled to credit Dr. Nikkah's opinion on this issue over Zylberman's contrary opinion.  *See Frias*, 225 F. Supp. 3d at 135.  The ALJ also helped account for any such absence or time-off-task limitations "by restricting [Taylor] to simple, routine work [and] work not done at a production rate pace." *See Reece*, 2023 WL 6211788, at *16.  It may have been helpful if the ALJ made a more explicit finding

22

regarding Taylor's likely frequency of absence and time off task, given he specifically asked Vause about it, but he at least provided "an adequate roadmap of his reasoning" by citing Dr. Nikkah's directly relevant findings on that issue. *See Rivera v. Astrue*, No. 10-cv-4324 (RJD), 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012).

Based on a review of the ALJ's RFC finding compared against the available medical opinions, Taylor's subjective testimony, and the other evidence in the record, the Court concludes that a reasonable factfinder could have formulated the same RFC. Thus, the ALJ's RFC finding was supported by substantial evidence.

### CONCLUSION

For the reasons stated above, the Court denies Taylor's Motion for Judgment on the Pleadings and grants the Commissioner's Cross-Motion for Judgment on the Pleadings.

The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and to close this case.

**SO ORDERED.**

Dated:      January 9, 2024
            Brooklyn, New York

_____
KIYO A. MATSUMOTO
United States District Judge
Eastern District of New York